IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIRECTV, LLC, a California                    3:13-CV-00712-BR
limited liability company,

                                              OPINION AND ORDER
        Plaintiff,

v.

KIMANH HOANG and LONG TRUONG,
individually and d/b/a
BLUEFIN SUSHI BAR & FINE
JAPANESE RESTAURANT, a/k/a
BLUEFIN SUSHI BAR,

        Defendants.


**MICHAEL A. COX**
7420 S.W. Bridgeport Road
Suite 101
Tigard, OR 97224
(503) 443-2100

**WAYNE D. LONSTEIN**
80 North Main Street
P.O. Box 351
Ellenville, NY 12428
(845) 647-8500

        Attorneys for Plaintiff


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff DIRECTV, LLC's Amended Motion (#18) for Default Judgment.  For the reasons that follow, the Court **GRANTS** Defendant's Motion and **DIRECTS** Plaintiff to submit a form of Judgment that conforms with this Order **no later than November 18, 2013.**

## BACKGROUND

Plaintiff is a distributor of satellite programming doing business throughout the United States.  Plaintiff provides interstate direct broadcast satellite programming to subscribers with specialized satellite-receiving equipment so that subscribers can watch programs on their televisions and/or listen to audio programs communicated electronically by Plaintiff via satellite.

Plaintiff holds proprietary rights to the satellite programming it transmits and is the owner of and/or a lawfully designated distribution agent for that satellite programming.

Defendants Kimanh Hong and Long Truong are principals of Bluefin Sushi Bar & Fine Japanese Restaurant in two separate locations:  12450 S.E. 82nd Avenue, Happy Valley, OR 97086, and 4138 N.E. Broadway Street, Portland, OR 97232.

In order to combat commercial misuse of Plaintiff's programming signals, Plaintiff engages investigators and auditors

who identify establishments that unlawfully show Plaintiff's
residential programming in commercial settings.

On April 5, 2012, at 12:15 p.m., auditor Glen Rust observed
one television set that was showing DIRECTV satellite programming
for public viewing at the Defendants' establishment located at
12450 S.E. 82nd Avenue.  Although Rust testifies in his Affidavit
that the fire-code capacity of the establishment at 12450 S.E.
82nd Avenue is 50-100 people, he does not testify as to the
actual number of patrons in the establishment at the time he
observed Plaintiff's programming.  Photographs attached to Rust's
Affidavit show approximately five patrons and a number of empty
tables in the establishment.  Defendants did not have a
commercial account with Plaintiff for this location.

Also on April 5, 2012, but at 1:00 p.m., Rust observed two
television sets that were showing DIRECTV satellite programming
for public viewing at the Defendants' establishment located at
4138 N.E. Broadway.  Rust testifies in his Affidavit that the
fire-code capacity of the establishment at 4138 N.E. Broadway is
50-100 people, but he does not testify as to the actual number of
patrons in the establishment at the time he observed Plaintiff's
programming.  Photographs attached to Rust's Affidavit show one
or possibly two patrons and a number of empty tables in the
establishment.  Defendants did not have a commercial account with
Plaintiff for this location.

3 - OPINION AND ORDER

On April 29, 2013, Plaintiff filed a Complaint in this Court against Defendants alleging Defendants' displays of Plaintiff's satellite programming for public viewing on April 5, 2012, violated the Cable Communications Policy Act (CCPA), 47 U.S.C. § 605(e)(3(C) and 18 U.S.C. § 2511 and constituted civil conversion.  Defendants failed to file any responsive pleading after being properly served by Plaintiff.  Accordingly, on July 10, 2013, Plaintiff filed a Motion for Entry of Default.  On July 26, 2013, the Court granted Plaintiff's Motion and entered an Order of Default in this matter.

On August 6, 2013, Plaintiff filed a Motion for Default Judgment in which Plaintiff requests statutory damages as to its claim for violation of § 605 of the CCPA, but Plaintiff did not address the issue of damages for the alleged violation of 18 U.S.C. § 2511 or damages for civil conversion.  As noted, Defendants are in default and did not file a response.

On September 9, 2013, the Court entered an Order in which it denied Plaintiff's Motion for Default Judgment on the ground that Plaintiff did not make any showing of damages as to its claims for civil conversion and violation of 18 U.S.C. § 2511 and did not provide any basis for the Court to enter a partial judgment.  The Court granted Plaintiff leave to file a renewed motion for default judgment to address the deficiencies set out in the Court's Order.

On September 20, 2013, Plaintiff filed a Motion to Dismiss
Count II and Count III of Plaintiff's Complaint.  Also on
September 20, 2013, Plaintiff filed an Amended Motion for Default
Judgment in which it seeks entry of default judgment only as to
its claim for violation of § 605 of the CCPA.

On October 31, 2013, the Court entered an Order granting
Plaintiff's Motion to Dismiss Count II and III of Plaintiff's
Complaint and dismissing Plaintiff's claims for civil conversion
and violation of 18 U.S.C. § 2511 with prejudice and without
costs.


## DISCUSSION

Federal Rule of Civil Procedure 55(b)(2) authorizes the
Court to enter a default judgment after default has been entered
by the Clerk of Court.  After the Clerk has entered a default
pursuant to Rule 55(a), the factual allegations of Plaintiff's
Complaint are taken as true and allegations as to damages must be
proven.  *DirecTV Inc. v. Mina Chau*, No. 11cv1821 WQH (BGS), 2012
WL 5967113, at *3 (S.D. Cal. Nov. 27, 2012)(citing *TeleVideo
Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.
1987)).  Thus, Plaintiff's Complaint establishes Defendants
unlawfully showed Plaintiff's residential programming in two
commercial settings on April 5, 2012, in violation of § 605 of
the CCPA.  Plaintiff, therefore, is entitled to damages,

attorneys' fees, and costs.

**I.    Damages**

Under 47 U.S.C. § 605(a) a "person" is prohibited from intercepting and distributing a television broadcast outside of "authorized" channels.  "'If a plaintiff proves a violation of section 605(a), a court may award compensatory damages, or, if the plaintiff requests, between $1,000 and $10,000 in statutory damages.'"  *Mina Chau*, 2012 WL 5967113, at *4 (quoting *Universal Sports Network, Inc. v. Jimenez*, C-02-2768-SC, 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002).  *See also* 47 U.S.C. § 605(e)(3)(C)(i)(II).  If a person commits a violation "willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000."  47 U.S.C. § 605(e)(3)(C)(ii).

"The district court has 'wide discretion in determining the amount of statutory damages to be awarded.'"  *DIRECTV Inc. v. Le*, 267 F. App'x 636 (9th Cir. 2008)(quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)).  When determining damages, courts generally evaluate the extent to which a plaintiff demonstrated a defendant's intent to profit from the rebroadcast, the extent of the rebroadcast, and the number of patrons viewing the rebroadcast.  *See, e.g., Mina Chau,* 2012 WL

5967113, at *4; *Jiminez*, 2002 WL 31109707, at *2.

When "'events were broadcast on a single occasion to a small audience, and plaintiff produces little or no evidence of financial gain, courts typically have awarded only the $1,000 statutory minimum.'" *Id*. (quoting *Jiminez*, 2002 WL 31109707, at *2). *See also Kingvision Pay-Per-View, Ltd. v. Chavez*, C 00-2270 CRB, 2000 WL 1847644, at *3 (N.D. Cal. Dec. 11, 2000)("In accordance with other default judgments involving similar facts, this Court imposes $1,000 in damages for the second violation. For the first violation, however, in which the defendants appear to have enjoyed a greater and more direct financial gain (because of both the cover charge and the greater number of patrons), the Court will assess $1,000 in damages and a $5,000 enhancement.").

Plaintiff alleges in its Complaint that Defendants' violations were willful and carried out "for purposes of direct or indirect commercial advantage or private financial gain." Compl. at ¶ 19. Plaintiff seeks statutory damages of $10,000 from Hoang and $10,000 from Truong pursuant to § 605(e)(3)(C)(i)(II); enhanced damages from both Defendants "up to" $100,000 pursuant to § 605(e)(3)(C)(ii); attorneys' fees; and costs.

Plaintiff does not allege in its Complaint that Defendants repeatedly violated § 605 or that Defendants had violated § 605 on prior occasions. Plaintiff also does not allege in its

Complaint that Defendants set a cover charge for their customers to view the broadcasts.  Moreover, the evidence in the record does not reflect the number of individuals who viewed the April 5, 2012, broadcasts, and, as noted, the photographs of the broadcasts show between one and five patrons in the establishments at the time of the broadcasts.

On this record the Court concludes minimum statutory damages under 47 U.S.C. § 605 are appropriate and awards Plaintiff $1,000.00 in statutory damages against Hoang and $1,000 in statutory damages against Truong.  The Court declines to award Plaintiff enhanced statutory damages against either Defendant under § 605(e)(3)(C)(ii) because the record does not reflect a substantive basis to do so.

## II.  Attorneys' Fees

"The court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).

Plaintiff is the prevailing party in this matter and, therefore, is entitled to attorneys' fees and costs.

### A.  Standards

The Supreme Court recently reiterated under federal fee-shifting statutes such as the CCPA that "the lodestar approach" is "the guiding light" in determining a reasonable fee. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1671-73 (2010)(internal

8 - OPINION AND ORDER

quotation omitted).  Under the lodestar method the court first determines the appropriate hourly rate for the work performed and then multiplies that amount by the number of hours properly expended in doing the work.  *Id.*  Although "in extraordinary circumstances" the amount produced by the lodestar calculation may be increased, "there is a strong presumption that the lodestar is sufficient."  *Id.* at 1669.  The party seeking an award of fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked."  *United Steelworkers of Am. v. Retirement Income Plan For Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)(quotations omitted).  When "determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'"  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

To determine the lodestar amount, the court may consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances;

> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the
> attorneys; (10) the undesirability of the case;
> (11) the nature and length of the professional
> relationship with the client; and (12) awards in
> similar cases.

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002)(quotation omitted).  A rote recitation of the relevant factors is unnecessary as long as the court adequately explains the basis for the award of attorneys' fees. *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1995).

The lodestar amount is presumed to be the reasonable fee, and, therefore, "'a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts.'"  *Summers v. Carvist Corp.*, 323 F. App'x 581, 582 (9th Cir. 2009)(quoting *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)).  "Adjustments [to the lodestar amount] must be carefully tailored . . . and [made] only to the extent a factor has not been subsumed within the lodestar calculation." *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2009)(citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)).

### B.   Hourly Rates for Plaintiff's Counsel

Plaintiff requests fees for 6.32 hours of work on this matter performed by three attorneys:  Lonstein, Dawn Conklin, and

10 – OPINION AND ORDER

Michael Cox.  To determine the reasonable hourly rate this Court
uses the most recent Oregon State Bar Economic Survey published
in 2012 (Oregon 2012 Survey) as its initial benchmark.  Attorneys
may argue for higher rates based on inflation, specialty, or any
number of other factors.

Lonstein had more than 30 years of experience during
the course of this action and requests a rate of $250 per hour.
According to the Oregon 2012 Survey, Portland attorneys with
Lonstein's level of experience bill on average at a rate of $326
per hour.  The Court, therefore, concludes the requested rate of
$250 per hour is a reasonable rate for Lonstein's services.

Conklin had 16 years of experience with five years of
federal-practice experience during the course of this action and
requests a rate of $250 per hour.  According to the Oregon 2012
Survey, Portland attorneys with Conklin's level of experience
bill on average at a rate of $256 per hour.  The Court,
therefore, concludes the requested rate of $250 per hour is a
reasonable rate for Conklin's services.

Cox had more than ten years of federal-practice
experience during the course of this action and requests a rate
of $250 per hour.  According to the Oregon 2012 Survey, Portland
attorneys with Cox's level of experience bill on average at a
rate of $280 per hour.  The 75th percentile of Portland attorneys
with his level of experience bill at an average hourly rate of

$300.  Cox has established his work in this matter is more similar to attorneys in the 75th percentile.  The Court, therefore, concludes the requested rate of $250 per hour is a reasonable rate for Cox's services.

     **C.    Paralegal hours**.

Plaintiff requests 4.6 hours of paralegal time at $95 per hour.  Plaintiff points to a number of cases in which courts have held $75 is a reasonable rate for paralegal work on cases similar to this matter.  Plaintiff does not point to any evidence to support a rate higher than $75 for paralegal work on cases such as this one.  Accordingly, the Court reduces the rate for paralegal work to $75 per hour.

In summary the Court awards attorneys' fees to Plaintiff in the amount of **$1,925.00**.

## III. Costs

Plaintiff seeks costs in the amount of $750 comprised of the fee to file this action and the cost to serve the summons and Complaint on Defendants.

     **A.    Standards**

Absent a showing of circumstances not relevant here, an award of costs is governed by federal law.  *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003).

28 U.S.C. § 1920 allows a federal court to tax specific

items as costs against a losing party pursuant to Federal Rule of

Civil Procedure 54(d)(1).  Section 1920 provides:

> A judge or clerk of any court of the United States
> may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part
> of the stenographic transcript necessarily
> obtained for use in the case;
> (3)Fees and disbursements for printing and
> witnesses;
> (4)Fees for exemplification and copies of papers
> necessarily obtained for use in the case;
> (5)Docket fees under section 1923 of this title;
> (6)Compensation for court-appointed experts,
> compensation of interpreters, and salaries, fees,
> expenses, and costs of special interpretation
> services under § 1828 of this title.
>
> A bill of costs shall be filed in the case and,
> upon allowance, included in the judgment or
> decree.

As noted, costs generally are awarded to the prevailing

party in a civil action as a matter of course unless the court

directs otherwise.  Fed. R. Civ. P. 54(d).  The court must limit

an award of costs to those defined in 28 U.S.C. § 1920 unless

otherwise provided for by statute.  *Grove v. Wells Fargo Fin.*

*Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010).  *See also*

*Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*,

920 F.2d 587, 588 (9th Cir. 1990)(citing *Crawford Fitting Co. v.*

*J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)).

### B.   Analysis

Plaintiff seeks $350 for the cost of filing this

action.  The cost of filing an action is specifically allowed

13 - OPINION AND ORDER

under § 1920.  Accordingly, the Court awards Plaintiff $350 for filing fees.

Plaintiff seeks $400 for process service.  The Ninth Circuit has concluded the costs for private service of process are taxable costs under § 1920(1).  The Court, therefore, awards Plaintiff $400 for the cost of process service.

Accordingly, the Court awards costs to Plaintiff in the amount of **$750.00.**

### <u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Plaintiff's Amended Motion (#18) for Default Judgment, **AWARDS** Plaintiff damages in the amount of $1,000 against Defendant Huong and $1,000 against Defendant Truong, **AWARDS** attorneys' fees to Plaintiff in the amount of **$1,925.00** and costs in the amount of **$750.00,** and **DIRECTS** Plaintiff to submit a form of Judgment that conforms with this Order **no later than November 18, 2013.**

IT IS SO ORDERED.

DATED this 4th day of November, 2013.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

14 - OPINION AND ORDER